UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **LIGHT & WONDER, INC.,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | NO. 6:25-CV-00288-LS |
| | § § § | |
| **GAMBLE SMART LLC,** | § § § | |
| *Defendant*. | § | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND ATTORNEYS' FEES

After being caught selling unauthorized copies of Light & Wonder, Inc.'s ("L&W") protected and proprietary games and using L&W's protected trademarks and branding, Gamble Smart LLC has failed to answer the Complaint. In light of Gamble Smart's default, all facts pleaded in L&W's Complaint are established as true. As a result, L&W is entitled to full relief against Gamble Smart, including: (1) a final judgment holding Gamble Smart liable on all claims; (2) an award of statutory damages, attorney's fees, and costs to compensate L&W; and (3) a permanent injunction requiring Gamble Smart to surrender all goods and materials infringing L&W's intellectual property and all records relating to its purchase and sale of such goods.

## FACTUAL BACKGROUND

Light & Wonder is a global leader in the gaming, online gaming and social gaming industries—manufacturing, marketing, leasing, and selling electronic slot machines and slot machine software as well as distributing and offering for play and for sale online wagering and online social gaming. For more than 85 years, L&W and its predecessors have delivered what customers and players value most: trusted security, creative content, operating efficiencies, and innovative technology. L&W offers customers a fully integrated portfolio of technology platforms,

robust systems, engaging game content, and unrivaled professional services and marketing solutions.[1]

L&W is the owner of numerous trademark registrations with the United States Patent & Trademark Office in connection with its gaming machines and software. L&W has continuously used the L&W Trademarks[2] in commerce since the marks' introductions, and goods associated with the marks have been widely promoted, sold, and leased to numerous customers throughout the United States. The physical goods covered by the L&W Trademarks are not distributed for use separate from use on L&W's electronic slot machines.[3]

L&W's land-based slot machine software is only authorized to run on specific approved gaming machine cabinets. L&W owns the entire right, title, and interest in and to original works of art in connection with gaming machines and software graphics, and those copyright rights in its gaming machine and software 2-D visual artworks are registered.[4]

Gamble Smart has used the L&W Trademarks and distributed unauthorized copies of the L&W Copyrights since at least March 2025. Indeed, L&W caught Gamble Smart advertising a gaming machine on Gamble Smart's website that displayed L&W's protected HUFF N' EVEN MORE PUFF trademarks and incorporated L&W's HUFF N' EVEN MORE PUFF copyrighted works without L&W's permission.[5]

In April 2025, L&W's agent, posing as a buyer, purchased one of these infringing machines directly from Gamble Smart. The machine contained and used L&W's HUFF N' PUFF Hard Hat Edition software. L&W's agent also purchased a hard drive with software for 403 L&W games, which used and contained L&W's trademarks and copyrighted software.[6] Although the cabinet was a genuine L&W cabinet, it had been materially altered: the serial plates were removed, an internal lock was drilled out, and the BIOS chip that ensured the copyrighted games could display

---

[1] Doc. 1 ¶¶ 1, 12,
[2] Unless otherwise indicated, capitalized terms used in this Motion shall have the meanings set forth in the Complaint.
[3] Doc. 1 at 4–5.
[4] Doc. 1 at 5–6.
[5] Doc. 1 at 6–7.
[6] Doc. 1 at 7.

in the machine's screen was *not* L&W's BIOS chip. In other words, the gaming machine cabinet was *not* an authorized and approved cabinet for L&W's HUFF N' PUFF software.[7]

The HUFF N' PUFF software (as well as the other 403 illegally copied games on the purchased hard drive) Gamble Smart sold was a DEMO build, not approved by L&W for commercial use or play. The unauthorized use of this software with the unauthorized cabinet resulted in L&W's Trademarks being modified, appearing cut off, off screen, broken onto two screens and/or on the wrong screen.[8] Gamble Smart's unauthorized use of the L&W Trademarks and the L&W Copyrights software is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does falsely create the impression that the goods sold by Gamble Smart are authorized, sponsored, or approved by L&W when, in fact, they are not.[9] These facts entitle L&W to judgment.

## LEGAL STANDARD

Rule 55 sets out the standard for entry of a default judgment. Obtaining a default judgment is a three-step procedure. First, a defendant must default. *See N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also Best Lucky Int'l Enter. Corp. v. Battery Experts, LLC*, 2017 WL 6987667, at *1 (E.D. Tex. Dec. 27, 2017). A "default" occurs when the defendant does not file an appropriate responsive pleading to the complaint. *See N.Y. Life Ins*, 84 F.3d at 141; *Sanchez v. Maddies Mayhem, LLC*, 4:19-cv-574-SDJ-CAN, 2020 WL 4808604, at *2 (E.D. Tex. July 7, 2020), *report and recommendation adopted by*, 2020 WL 4785046 (E.D. Tex. Aug. 18, 2020). Second, the clerk of the court must enter default by making a notation that the plaintiff established defendant's default through affidavit. *See N.Y. Life Ins*, 84 F.3d at 141; *Sanchez*, 2020 WL 4808604, at *2; *Best Lucky Int'l Enter.*, 2017 WL 6987667, at *1. Once the clerk has entered its default, the only remaining step is for the entry of default judgment. Fed. R. Civ. P. 55.

---

[7] Doc. 1 at 7.
[8] Doc. 1 at 7.
[9] Doc. 1 at 8–9.

If damages are sought, and the amount of such damages are liquidated ("a sum certain"), an evidentiary hearing isn't required. *E.g.*, *Romero v. Cordero*, 787 F. Supp. 3d 789, 794 (W.D. Tex. 2025). If, however, the plaintiffs seeks unliquidated damages, a damages hearing is typically required. *Id*. When, as here, the plaintiff limits its damages to statutory damages,[10] however, no hearing is required if the complaint proves the defendant violated the statute and is therefore liable for such damages. *E.g.*, *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 786–87 (E.D. Tex. 2023).

Courts consider a three-part analysis in determining whether to enter a default judgment: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Sanchez*, 2020 WL 4808604, at *2 (quoting *Graham v. Coconut LLC*, No. 4:16-cv-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017)). In conducting this analysis, the Court is to assume that the defendant admits all well-pleaded facts in the plaintiff's complaint; however, the defendant does not admit any allegations concerning damages. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Sanchez*, 2020 WL 4808604, at *2; *Best Lucky*, 2017 WL 6987667, at *1.

Here, the first two requirements are easily met. Courts examine six factors when deciding whether the entry of a default judgment is procedurally warranted:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). All six factors favor entry of default judgment here: given the entry of default there are no material issues of fact at issue; no substantial prejudice to Gamble Smart appears in the record; the grounds of default couldn't be clearer (Gamble Smart had counsel at the time its answer was due and still defaulted); Gamble Smart's

---

[10] While Gamble Smart also infringed L&W's trademarks, L&W is electing only to pursue monetary damages as it relates to its copyright infringement claims, which are statutorily based, eliminating the need for a hearing on damages.

default is deliberate rather than because of a good-faith mistake or excusable neglect—it has refused to hire counsel after its first counsel withdrew; and there is nothing that might support an argument that entry of default judgment against a brazen infringer like Gamble Smart would be harsh or subject to vacatur later. Default judgment is therefore warranted. *E.g.*, *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Moreover, it is L&W and *not* Gamble Smart that will be substantially prejudiced without the entry of default judgment. *E.g.*, *Sanchez*, 2020 WL 4808604, at *3 (quoting *United States v. Finacnon,* No. 7:08-cv-61-O 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009)) (explaining a "Plaintiff's 'interests [are] prejudiced because [Defendant's] failure to respond [brings] the adversary process to a halt.'").

      L&W's complaint is also legally sufficient to establish Gamble Smart's liability on all of L&W's claims. All L&W must show to be entitled to default judgment is that the facts now proven as a result of Gamble Smart's default "raise a right to belief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

      Here, L&W plausibly alleges that Gamble Smart infringed the L&W Trademarks, L&W Common Law Trademarks, L&W Copyrights, and otherwise engaged in unfair competition in violation of the Lanham Act. Such facts entitle L&W to complete relief.

      Having established a sufficient basis for judgment, the last step is for the Court to determine the proper remedy. Those remedies should include the permanent injunction that L&W requested in its complaint,[11] a form of which is attached to this motion as **Exhibit 1**. Section 502(a) of the Copyright Act and Section 1116(a) of the Lanham Act specifically provide for injunctive relief. Indeed, Gamble Smart's default makes that relief especially important so that L&W may discover the source of Gamble Smart's illegal copies of the L&W Copyrights, which consists of *hundreds* of copyrighted works, along with the L&W Trademarks. Ascertaining the original source of the

---

[11] Doc. 1 at 15–17.

infringing and unauthorized goods is critical for L&W to stop ongoing violations, prevent future infringement, and safeguard consumers. "The Lanham Act exists 'to protect the ability of consumers to distinguish among competing producers.'" *Coach Inc. v. Sassy Couture*, No. SA-10-CV-601-XR, 2012 WL 162366, at *12 (W.D. Tex. Jan. 19, 2012) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 190 (1985)). Without source information from Gamble Smart, these goods will continue to circulate unchecked, exposing consumers to the risks associated with illegal, unapproved, and unregulated gaming devices. Identifying the origin is not only essential for enforcing L&W's trademark rights—it is necessary to protect the public from harm.

The Court should also award L&W statutory damages of $150,000 per infringed work, in accordance with 17 U.S.C. § 504, for all 204 copyrighted works that Gamble Smart infringed when it sold illegal copies of the same, including to L&W. Such relief should also include an award of attorney's fees and costs pursuant 17 U.S.C. § 504 and 15 U.S.C. § 1117, which are proven in **Exhibit 2**. The Court may therefore enter final judgment without a hearing.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, L&W prays that the Court grant Plaintiff's Motion for Default Judgment and a permanent injunction and final judgment against Gamble Smart as shown in Exhibit 1, which includes ordering Gamble Smart to supply L&W with the name, address and contact information for each person or entity from whom or from which Defendant has purchased or obtained any item bearing L&W Trademarks, L&W Common Law Trademarks or L&W Copyrights, including copies of all records and receipts of the aforementioned sales.

Date: <u>December 12, 2025</u>               Respectfully submitted,

/s/ Joshua J. Bennett
**BAKER & HOSTETLER LLP**
Joshua J. Bennett
Courtney B. Perez
2850 North Harwood Street
Suite 1100
Dallas TX 75201-2640
Phone: 214-210-1200
jjbennett@bakerlaw.com
cbperez@bakerlaw.com

**BAKER & HOSTETLER LLP**
Robertson D. Beckerlegge (*pro hace vice*)
(NY State Bar No. 3935046)
Megan A. Corrigan (*pro hace vice*)
(NY State Bar No. 5693189)
45 Rockefeller Plaza
New York, NY 10111
Phone: 212-589-4200
rbeckerlegge@bakerlaw.com
mcorrigan@bakerlaw.com

*Attorneys for Plaintiff, Light & Wonder, Inc.*