**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **LIGHT & WONDER, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:25-CV-288-LS** |
| | § | |
| **GAMBLE SMART LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE
JUDGE REGARDING PLAINTIFF LIGHT & WONDER, INC.'S MOTION FOR
DEFAULT JUDGMENT [DKT. NO. 26]**

TO:    THE HONORABLE LEON SCHYDLOWER,
       UNITED STATES DISTRICT JUDGE

The undersigned submits this Report and Recommendation to the District Judge pursuant

to United States Code Title 28, Section 636(b)(1)(c), Federal Rule of Civil Procedure 72, and

Appendix C of the Local Rules of the United States District Court for the Western District of Texas,

Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is

Plaintiff Light & Wonder, Inc.'s Motion for Default Judgement, Permanent Injunction, and

Attorneys' Fees. Dkt. No. 26. Having considered the Motion, the Court **RECOMMENDS** that

the District Judge **GRANT** the Motion. The Court further **RECOMMENDS** that the District

Judge **STRIKE** Defendant Gamble Smart, LLC's pro se response to Light & Wonder's Motion,

Dkt. No. 27, because business entities like Gamble Smart cannot represent themselves pro se.

*See* Dkt. No. 24; *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004).

**I. BACKGROUND**

Light & Wonder (L&W) filed its original complaint on July 9, 2025, alleging claims of

statutory copyright infringement, statutory trademark infringement, statutory unfair competition

and false designation of origin, and common law trademark infringement and unfair competition

against Gamble Smart for Gamble Smart's advertisement, sale, and distribution of L&W's HUFF N' EVEN MORE PUFF copyrights and trademarks. Dkt. No. 1. L&W served Gamble Smart the same day, making Gamble Smart's answer due on July 30, 2025. Dkt. No. 10. Gamble Smart moved for, and the Court granted, three subsequent extensions to its answer deadline, ultimately making Gamble Smart's answer due on October 17, 2025. Dkt. Nos. 12–13, 15, 17. L&W requested the Clerk's entry of default when Gable Smart did not answer, and the Clerk entered default against Gamble Smart on October 24, 2025. Dkt. Nos. 20–21.

L&W manufactures, markets, leases, and sells electronic slot machines; the gaming software the machines use; and online wagering and social versions of the machines. Dkt. No. 1 at 3. Because it sells electronic gambling equipment, L&W is subject to numerous state regulatory agencies, and each gaming machine (and associated software) L&W produces must receive regulatory approval before L&W can market it. *Id.* at 4. Once the machines and software are approved, the regulatory bodies track the machine's serial numbers to monitor the entire process. *Id.* Without the requisite regulatory approval, L&W effectively cannot operate its business in the jurisdiction that denied approval. *See id.* at 3–4. This means it is important to L&W that it ensure the integrity of the products that bare it and its products' names and likenesses.

L&W owns several registered and common law trademarks and copyrights. *Id.* at 4–5, 7. One of L&W's copyrights is for HUFF N' EVEN MORE PUFF. *Id.* at 35. It includes the logo, the art, the machine, and the software. *See id.* at 4–7, 35. L&W has continuously used those trademarks and copyrights. *Id.* at 5. It has also taken the appropriate steps to enforce its trademarks and copyrights, including registering the marks, sending cease-and-desist letters, and partnering with law enforcement if necessary. *Id.* at 7.

L&W alleges that Gamble Smart infringed L&W's trademarks and copyrights by advertising and selling items that display L&W trademarks and copyrights without L&W's authorization. *Id.* at 7–8. This includes use of L&W's marks and software on gaming machines Gable Smart sold that facially appear to be L&W machines. L&W's marks appear on the machines themselves and in the displays of games played on the machines. L&W did not give permission for Gable Smart to use its marks, its software, or modified software that may have been used in the knockoff machines that Gamble Smart marketed and sold.

L&W bases its allegations on an investigation it conducted. L&W's investigation began in March 2025, when it discovered an advertisement on Gamble Smart's website for a gaming machine that displayed the HUFF N' EVEN MORE PUFF trademarks and copyrights. *Id.* at 7. Following the discovery, L&W made a series of purchases from Gamble Smart, including a machine containing L&W's HUFF N' PUFF Hard Hat Edition software and a hard drive containing the software for 403 L&W games. *Id.* at 7–8. The machine L&W purchased from Gamble Smart was a genuine L&W gaming machine that was missing the plates displaying the machine's serial numbers, had an internal lock drilled out, and contained a BIOS chip that did not belong to L&W. *Id.* Additionally, the HUFF N' PUFF software on the machine was DEMO software that L&W had authorized for commercial use or play. *Id.* at 8. L&W did not authorize Gamble Smart's use or distribution of its trademarks and copyrights. L&W's trademarks appear modified, cut off, or otherwise broken or in the wrong place on the machine. *Id.* at 8–10. L&W contends that Gable Smart's conduct is an unauthorized and infringing use of its marks and copyrights that could create confusion in the marketplace about the origin of goods that appear to be L&W's goods but do not perform or have the characteristics of L&W's goods, potentially

negatively affecting L&W's reputation and business prospects. Moreover, it creates the impression that a potential consumer is purchasing an L&W good when it is not.

## II. APPLICABLE LAW

Under Federal Rule of Civil Procedure 55, the Clerk must enter default against a party that "has failed to plead or otherwise defend" a lawsuit. FED. R. CIV. P. 55(a). Once the Clerk enters default against a party, the opposing party may request a default judgment either from the Clerk or from the court. *Id.* 55(b). Where, as here, the party requesting default judgment seeks more than a "sum certain," it may request the entry of a default judgment only from the court. *Id.*

When analyzing whether a default judgment is appropriate, a court must consider "(1) whether default judgment is procedurally warranted; (2) whether the [moving party's complaint] sufficiently sets forth facts establishing that it is entitled to relief; and (3) what form of relief, if any, the [moving party] should receive." *United States v. 1998 Freighter VIN #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). Courts use six factors to determine if default judgment is procedurally warranted: "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Apac v. Villar*, EP-24-CV-00262, 2025 WL 2643192, at *2 (W.D. Tex. Sept. 5, 2025). The ultimate decision rests squarely within the court's discretion. *Lindsey*, 161 F.3d at 893.

Except for damages, courts admit the moving party's well-pled facts as true. *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"); *U.S. for the Use of M-CO*

*Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The well-pled facts must establish a "sufficient basis" for the court to enter judgment against the defendant. *Nishimatsu*, 515 F.2d at 1206. Unlike the pleading standard a court uses when deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the pleadings in a default judgment context need only be "sufficient to satisfy the low threshold of [Federal Rule of Civil Procedure] 8." *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 497–500 (5th Cir. 2015).

Courts look to the law governing the plaintiff's claims to decide the appropriate relief, if any. *See Apac*, 2025 WL 2643192, at *10–11. For copyright and trademark infringement claims, the appropriate relief is monetary, injunctive, or both. *See* 15 U.S.C. §§ 1116–17; 17 U.S.C. §§ 502, 504. Generally, when a party seeks more than a "sum certain," the court must hold an evidentiary hearing to establish damages before awarding default judgment. *Romero v. Cordero*, 787 F. Supp. 3d 789, 794 (W.D. Tex. 2025) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). However, "Rule 55 'explicitly grants the district court wide latitude'" in deciding if a hearing is necessary, and even when a party seeks damages that are not a "sum certain," the court need not hold a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* (quoting *James*, 6 F.3d at 310).

In a copyright case, monetary and injunctive relief are damages that a court can mathematically calculate because each form of relief is statutorily prescribed. 17 U.S.C. §§ 502(a), 504(c) (allowing for injunctive relief and capping monetary relief at $150,000 per infringed work if the defendant willfully infringed the work); 15 U.S.C. §§ 1116(a), 1117 (allowing for injunctive relief and attorneys' fees). For statutory damages under Section 504, the Court "has 'virtually unfettered' discretion to set an amount it considers just within the statutory range." *Bee Creek Photography v. Autin Media Rooms LLC*, No. 1:23-CV-01270-RP, 2025 WL

2182326, at *3, (W.D. Tex. Apr. 25, 2025) *R. & R. adopted* No. 1:23-CV-01270-RP, 2025 WL 2550869 (W.D. Tex. Sept. 4, 2025) (quoting *Cullum v. Diamond A Hunting, Inc.*, 484 F. App'x 1000, 1002 (5th Cir. 2012)). The guiding principle when determining how much to award in statutory damages is that the amount should be sufficient to deter future copyright infringement—*i.e.*, it should cost less for a defendant to comply with copyright law than to violate it. *Id.* Generally, courts look to several factors in making their decisions, including the infringer's expenses saved and profits gained, the infringer's state of mind when committing the infringement, and the deterrent effect an award will have on other potential infringers. *Id.* Courts also generally find that any statutory damages award should be related in some capacity to the actual damages the plaintiff suffered. *Id.*

For attorneys' fees and costs under Section 505, courts have discretion to award the prevailing party "full costs" of the litigation. *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 336 (2019); 17 U.S.C. § 505. "Full costs" does not mean everything the party has spent in connection with the litigation; it means a court may award only those costs that fall within one of the six categories of costs outlined in the general costs statutes, United States Code Title 28, Sections 1821 and 1920. *Rimini Street*, 586 U.S. at 341; *see* 28 U.S.C. §§ 1821, 1920. Those categories include a witness's travel expenses and per diem subsistence expenses, clerk's fees, marshal's fees, transcript fees, printing and witness disbursements or fees, exemplification, costs of making copies, docket fees, compensation for court-appointed experts and interpreters, and any salaries, fees, expenses, and costs associated with special interpretation services. 28 U.S.C. §§ 1821, 1920. Section 505's costs statute does not cover anything outside those categories, including retained expert fees, expenses for e-discovery, or other investigatory expenses. *See Rimini Street*, 586 U.S. at 341–42, 345–46.

While L&W pled federal trademark claims and common law copyright claims, it seeks monetary relief solely for its statutory copyright claims, thus vitiating the need for an evidentiary hearing to determine damages for the common law claims. Dkt. No. 26 at 4 n.10. L&W seeks injunctive relief for its copyright claims and its trademark claims. For a copyright claim, statutory damages under Section 504 can range anywhere from a minimum $200 per infringed work if the infringer does not realize they are even infringing a copyright, to maximum $150,000 per infringed work if the infringer acted willfully. 17 U.S.C. § 504(c)(2). Absent a finding of innocence or willfulness, the statutory range under Section 504 is a minimum of $750 to a maximum of $30,000 per infringed work. *Id.* § 504(c)(1).

### III. ANALYSIS

Here, L&W moved for a default judgment against Gamble Smart. The District Judge should **GRANT** the Motion because this case meets all three factors in support of default judgment. First, entering a default judgment against Gamble Smart is procedurally warranted because Gamble Smart has had over four months to file a responsive pleading but has failed to do so also while receiving several notices from the Court that should have prompted it to do. Second, L&W's complaint meets Rule 8's pleading standard and thus sets forth a sufficient factual basis to support default judgment. Finally, the monetary and injunctive relief L&W seeks is the appropriate remedy to award in this case.

**A. Entering a default judgment against Gamble Smart is procedurally warranted.**

L&W first served Gamble Smart on July 9, 2025. Then, instead of answering or making any Rule 12 motions, Gamble Smart consistently requested more time to file a responsive pleading, eventually extending its deadline from July 30, 2025, to October 17, 2025—a total of 90 days. Despite the lengthy extension, Gamble Smart did not meet its October 17 deadline, did

not request any additional time, and has not answered or filed any Rule 12 motion to date. Gamble Smart's failure to answer does place it in default, and the Clerk entered default against Gamble Smart on October 24, seven days after its pleading deadline and 97 days after L&W perfected service. The Clerk's entry of default was therefore proper.

Because the Clerk's entry of default was proper, the Court next turns to the *Lindsey* factors to determine if entering default judgment against Gamble Smart is procedurally warranted. All six factors weigh in favor of entering a default judgment. First, no material issues of facts are at issue because, by its default, Gamble Smart admits all L&W's well-pled facts as true. If it had wanted to challenge any of the facts in L&W's pleadings, it could have filed a Rule 12(b)(6) motion for failure to state a claim or an answer specifically denying any allegations it wished. *See Wooten*, 788 F.3d at 500.

Second, there has not been any substantial prejudice to Gamble Smart because it was represented by counsel at all times before its final pleading deadline. Indeed, the Court even required Gamble Smart's counsel to remain its counsel until after the final pleading deadline passed to ensure adequate representation. Since then, it has not sought new counsel, asked for time to seek new counsel, or filed a responsive pleading. Instead, it has attempted to proceed *pro se*, and the Court admonished Gamble Smart that, as an entity, it cannot proceed pro se. Dkt. No. 24. Indeed, the only prejudice at present is the prejudice to L&W from the delay in the case. *See Apac*, 2025 WL 2643192, at *5.

Third, the grounds for default are clearly established. Gamble Smart had three chances to file a responsive pleading, but it failed to do so. A failure to answer within 21 days after service is a default in and of itself; a failure to answer within 90 days post-service certainly clearly establishes grounds for a default judgment.

Fourth, Gamble Smart's default is not the result of excusable neglect or good faith mistake. Its first request for an extension of time may be excusable because it did not learn of the action until July 22, eight days before the pleading deadline. However, every excuse Gamble Smart proffered since its initial request for more time is simply that the parties are engaging in settlement discussions. While settlement discussions may be a reason to allow an extension of time to respond, it is not an excuse for a party to wholly avoid its obligation to respond to the complaint. Indeed, settlement discussions regularly occur throughout the time a case is pending, but that does not prevent the parties from moving the case forward. Nothing in the record indicates any kind of mistake, good faith or otherwise, and putting the case on pause solely for settlement discussions is not any kind of excusable neglect.

Fifth, entering a default judgment against Gamble Smart would not be overly harsh given the undisputed well-pled facts that must be construed in favor of L&W. Gamble Smart had multiple opportunities over many months to contest these facts. It failed each time.

Sixth, the Court likely would not feel obligated to set aside default on Gamble Smart's motion. The Court is not aware of a basis Gamble Smart could allege that would warrant setting aside default under the present circumstances. Because all six *Lindsey* factors weigh in favor of granting default judgment, the Court finds that entering a default judgment against Gamble Smart is warranted.

**B. L&W's pleadings sufficiently allege facts that establish its entitlement to relief.**

Rule 8 requires merely "a short and plain statement showing that the pleader is entitled to relief." FED. R. CIV. P. 8. "The purpose of this requirement is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy this standard, L&W must plead

facts sufficient to "raise a right to relief above the speculative level, on the assumption that the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. While L&W's allegations need not be detailed, it must plead more than bare conclusions and unsupported assertions. *Wooten*, 788 F.3d at 498 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Even though L&W's is not required to plead particularly detailed facts, L&W asserted detailed factual assertions, including pictures of the alleged infringing devices. Its allegations are more than enough to put Gamble Smart on notice not only of the claims L&W asserts against it, but also of the exact instances (including dates) on which L&W claims infringement occurs. All L&W's allegations are more than enough to provide Gamble Smart with fair notice of the claims against it. L&W's pleading therefore satisfies Rule 8's pleading standard and its complaint is well-pled for the purpose of default judgment. *Id.* at 499 (holding that Wooten satisfied the "well-pled" prong for default judgment on far less facts than what L&W pled here).

### C. Monetary and injunctive relief are appropriate kinds of relief in this case.

Having found that the first two prongs of the default judgment analysis weigh in favor of granting default judgment, the Court turns to the third factor: the relief it should award L&W, if any. Through its Motion, L&W requests the following relief: (1) statutory damages of $150,000 for each of the 204 infringed works under United States Code Title 17, Section 504(c)(2); (2) attorneys' fees under United States Code Title 15, Section 1116(a) and Title 17, Section 505; and (3) a permanent injunction that prevents Gamble Smart from further infringing L&W's copyrights and trademarks. Dkt. Nos. 26 at 5–6, 26-1. It also seeks court costs and attorneys' fees under United States Code Title 17, Section 505, which allows for an award of attorneys' fees and "full costs" to a prevailing party under Title 17. L&W attaches tables documenting the court costs and attorneys' fees it has incurred through December, 2025, and an affidavit confirming the

accuracy of those tables to its Motion. Dkt. No. 26-2. To the extent that Gamble Smart disputes those amounts, the Court must strike its response and cannot consider any arguments Gamble Smart makes in its response because Gamble Smart filed the response pro se, just like its previously struck motion to refer the case to ADR. *Memon*, 385 F.3d at 873. The Court thus takes each form of relief in turn.

### i. Statutory damages.

The statutory damages L&W seeks are a "sum that can be made certain" through the simple equation of the statutory permitted amount multiplied by the number of infringed works. L&W has therefore shown that it is entitled to the statutory damages it seeks and that statutory damages are an appropriate remedy. What remains for the Court then is the amount of statutory relief to award.

L&W seeks the statutory maximum, $150,000 per infringed work. If the Court were to award L&W the exact relief it seeks here, it would award $150,000 for each of the 204 infringed works—a statutory award totaling $30,600,000. Other than asserting that Gamble Smart engaged in willful infringement and requesting the maximum, L&W provides no evidentiary basis to support a maximum award. *See Bee Creek Photography*, 2025 WL 2182326, at *4. L&W also provides no evidence of its actual damages other than the allegation that Gamble Smart violated L&W's copyrights "with the intent to further its financial interest". Dkt. No. 1 at 12. Indeed, L&W never alleges that Gamble Smart did profit off its infringement, only that L&W is entitled to any profits from the infringement. *See id.* at 12–13. L&W does, however, provide some evidence for this Court to give an award higher than the minimum statutory amount. Its focus on Gamble Smart's willfulness shows that this case is not identical to those cases in which the sole justification for statutory damages is the infringement itself. *See Bee Creek Photography*, 2025

WL 2182326, at *4 (explaining that, because Bee Creek provided no evidence to distinguish its case from other statutory minimum cases, the maximum statutory amount was excessive and awarding a far smaller amount). L&W's allegations are enough to persuade the Court that the statutory minimum is too low, but without any other evidence, the Court finds an award of over $30 million excessive.

Instead, the Court finds that an award of $5,000 per infringed work, for a total of $1,020,000, is more appropriate in this case. Through its prior filings which have since been struck from the record, Gamble Smart has suggested potential bankruptcy. *See* Dkt. No. 22. Accordingly, an amount of $5,000 per infringed work is high enough to deter Gamble Smart from further infringing L&W's copyrights and trademarks, but not so high as to be an unreasonably excessive punishment against a party that already has low funds.

### ii. Costs and attorneys' fees.

Under United States Code Title 17, Section 505, "the court in its discretion may allow the recovery of full costs by or against a party" and "may also award a reasonable attorney's fee to pay the prevailing party as part of the costs." Here, L&W claims a total of $16,837.56 in costs and $49, 963.50 in attorneys' fees. Dkt. No. 26-2 Exs. 2-A, 2-B. L&W supports its claims with the affidavit of Joshua J. Bennett and a verified summary of the fees billed per attorney per month. Dkt. No. 26-2. Bennett's affidavit provides an itemized breakdown of the costs L&W has incurred thus far, which is as follows:

a. $605 in filing fees;
b. $212.33 for service of the summons and complaint;
c. $16,008.63 for the purchase from Gamble Smart; $12,000 of this was for the machine and hard drive and the remaining costs consist of fees associated with the purchase and shipping; and
d. $11.60 in postage fees.

*Id.* at 2. L&W's filing fees are generally recoverable as "fees of the clerk" under Section 1920(a). However, the filing fees are the only fees L&W may recover here. The $16,008.63 spent on investigatory purchases is not an expense any category of Sections 1821 or 1920 covers, so it is not an expense L&W can recover under Section 505. *See Rimini Street*, 586 U.S. at 340–41, 346; *See also* 28 U.S.C. §§ 1821, 1920. Further, "costs for private process servers are not recoverable, absent exceptional circumstances." *Zastrow v. Houston Auto M. Imps. Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) (per curiam). L&W makes no showing that exceptional circumstances exist in this case to justify including the $212.33 service fees in the Court's award of costs. Finally, incidental costs like postage are generally viewed as overhead costs, not costs of litigation, and Section 1920 therefore does not cover them. *Smith W. Tex. Props., Ltd. v. Allied Prop. & Cas. Ins. Co.*, 555 F. Supp. 3d 342, 348–49 (W.D. Tex. 2021). The Court therefore cannot award L&W its $11.60 postage cost.

As for attorneys' fees, L&W proves through its verified summary that L&W has incurred $40,236.50 in billed fees and $9,727.00 in unbilled fees, for a total of $49,963.50 in attorneys' fees incurred. Dkt. No. 26-2 Exs. 2-A, 2-B. In a copyright action, awarding attorneys' fees "is the rule rather than the exception and should be awarded routinely." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015) (quoting *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)). Courts consider several non-exhaustive factors when determining to award attorneys' fees under Section 505, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)).

Here, the Court finds that awarding L&W its attorneys' fees is appropriate under the circumstances. L&W presents an objectively reasonable position in its lawsuit, and to the extent that any misconduct or other reason exists as to why the Court should not award attorneys' fees, Gamble Smart had a duty to raise those issues. Gamble Smart has not raised any such issues, and the Court is unaware of any reason to refrain from awarding L&W attorneys' fees. Accordingly, the Court should award L&W $49,963.50 in attorneys' fees under Section 505.

### iii. Injunctive relief.

L&W also seeks injunctive relief United States Code Title 17, Section 502(a), and United States Code Title 15, Section 1116(a). It seeks injunctive relief so that it can determine the original source of the infringing goods Gamble Smart sold and thus "stop ongoing violations, prevent future infringement, and safeguard consumers." Dkt. No. 26 at 6. L&W specifies the exact terms of the injunction it seeks in the first exhibit it attaches to the Motion. Dkt. No. 26-1.

Under Section 502, L&W is entitled to an injunction if it can show a substantial likelihood of success on the merits, a threat of irreparable harm should the Court not enter an injunction, the threat of injury L&W faces outweighs any harm entering an injunction would cause Gamble Smart, and that the injunction is not adverse to the public interest. *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir. 1990) *reh'g denied* Jun. 15, 1990, *and cert. denied* 498 U.S. 952 (1990).

L&W can show a substantial likelihood of success on the merits because Gamble Smart admits all well-pled facts as true. L&W's well-pled facts clearly indicate that, on at least one occasion, Gamble Smart infringed L&W's HUFF N' EVEN MORE PUFF copyrights and trademarks.

L&W also can show a threat of irreparable harm because without the injunction, the infringed and defective goods will continue to circulate and harm L&W's reputation, not to mention risk a regulatory sanction or outright bar to L&W's operations, if one of the regulatory boards that governs L&W's operations treats an infringing good as L&W's. Indeed, if a regulatory board were to obtain the materially altered game cabinet that was missing its serial plates, because Gamble Smart used L&W's marks without L&W's permission, the regulatory board may construe the cabinet as one L&W put on the market, view the alteration as L&W's attempt to avoid regulation, and punish L&W accordingly.

That threat of harm likely outweighs any harm Gamble Smart would suffer from the injunction because Gamble Smart has suggested its potential bankruptcy in prior filings that the Court has since struck from the record. *See* Dkt. Nos. 22, 24. Should Gamble Smart enter bankruptcy, it may not be able to carry on any business, much less an infringing business, so it likely will not suffer harm from an injunction. Additionally, if there exists a particular harm Gamble Smart may suffer because of the injunction, the Court cannot know about such a harm unless Gamble Smart raises it. Gamble Smart has yet to raise any such issue with the Court, though it has had ample opportunity to do so.

Finally, issuing an injunction here is not contrary to the public interest because consumers have an interest in using and acquiring quality goods and in receiving what they ask for—if they purchase an L&W machine or software, it should be an L&W machine or software, not some knockoff. Accordingly, L&W meets all the criteria for granting a permanent injunction in this case, and the relief is appropriate for this Court to award with the default judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the District Judge **GRANT** L&W's Motion for Default Judgment and **STRIKE** Gamble Smart's response because an entity cannot proceed pro se. *See* Dkt. No. 24. The Court further **RECOMMENDS** that the District Judge **GRANT** L&W the following relief:

(1) $1,020,000 in statutory damages under Section 504;

(2)  $605.00 in costs under Section 505;

(3) $49,963.50 in attorneys' fees; and

(4)  a permanent injunction in the form attached to this Report and Recommendation.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** this 20th day of April, 2026.


DAN N. MACLEMORE
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **LIGHT & WONDER, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **CASE NO. 6:25-CV-288-LS** |
| | § | |
| **GAMBLE SMART LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>PERMANENT INJUNCTION ORDER</u>**

This matter comes before the Court by motion filed by L&W for the entry of final judgment and permanent injunction by default against Gamble Smart for its copyright infringement, trademark infringement, unfair competition and false designation of origin claims arising out of Gamble Smart's unauthorized use of L&W's L&W Trademarks, L&W Common Law Trademarks and L&W Copyrights (as defined in L&W's Complaint, Dkt. No. 1) including, without limitation, in its advertising, marketing, promoting, distributing, displaying or offering for sale and/or selling unauthorized gaming machines and software, containing identical or substantially indistinguishable copies of the L&W Trademarks, L&W Common Law Trademarks and/or L&W Copyrights. Having **GRANTED** judgment in L&W's favor on all counts, the Court **ORDERS** that Gamble Smart, along with all of its officers, agents, servants, employees, representatives, successors, assigns, attorneys, and all other persons acting on behalf of, for, with, through, or under authority from Gamble Smart, or in concert or participation with Gamble Smart, who receive actual notice of this Order, are permanently enjoined and restrained from:

  A. Using in connection with the manufacture, sale, offering for sale, distribution, advertising, or promotion of any goods or services, including but not limited to use on the products themselves, and/or on the labels or packaging for the products

and/or advertising or promotional materials for such products or services any reproduction, counterfeit, copy, or colorable imitation of the L&W Trademarks or L&W Common Law Trademarks, or any other trademarks, service marks, names, trade names, trade dresses, logos, designs, that are substantially indistinguishable from, confusingly similar to, or dilutive of any of the L&W Trademarks or L&W Common Law Trademarks;

B. Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure L&W's business reputation or dilute the distinctive quality of L&W's name and the L&W Trademarks or L&W Common Law Trademarks;

C. Using a false description or representation, including words or other symbols tending to falsely describe or represent Gamble Smart's unauthorized goods as being those of L&W, or as being sponsored by, licensed by, authorized by, originating from, or otherwise associated with L&W, and from offering such goods into commerce;

D. Further infringing the L&W Trademarks and L&W Common Law Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by L&W bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the L&W Trademarks or L&W Common Law Trademarks;

E. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the L&W Trademarks or L&W Common Law Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture,

production, circulation, or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to L&W, or to any goods sold, manufactured, sponsored, approved by, or connected with L&W;

F. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold, or rented by Gamble Smart is in any manner associated with, connected to L&W, or is sold by, manufactured by, licensed by, sponsored by, approved by, or authorized by L&W;

G. Copying, displaying, distributing or creating derivative works of the L&W Copyrights;

H. Engaging in any activity constituting an infringement of any of the L&W Trademarks, L&W Common Law Trademarks or L&W Copyrights or of L&W's rights in, or to use or to exploit, said L&W Trademarks, L&W Common Law Trademarks or L&W Copyrights, or constituting any dilution of L&W's name, reputation or goodwill;

I. Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the L&W Trademarks, L&W Common Law Trademarks, or L&W Copyrights;

Page 3 of 5

J. Selling, offering for sale, or advertising any merchandise bearing the L&W Trademarks, L&W Common Law Trademarks, or L&W Copyrights on the Internet or in e-commerce, including but not limited to all forms of social media; and

K. Effecting assignments or transfers, forming new entities or associations, assisting, aiding, abetting any other person or entity, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (A) through (J).

The Court further **ORDERS** that Gamble Smart be ordered to recall and deliver up for destruction to L&W all unauthorized products and materials containing copies of, bearing, or sold under, the L&W Trademarks, L&W Common Law Trademarks, or containing or embodying copies of the L&W Copyrights, which have been shipped by Gamble Smart or under their authority, to any customer, including but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to the injunctive relief against Gamble Smart.

Gamble Smart must also supply L&W with the name, address and contact information for each person or entity from whom or from which Gamble Smart has purchased or obtained any item bearing L&W Trademarks, L&W Common Law Trademarks or L&W Copyrights, including copies of all records and receipts of the aforementioned sales.

Any failure by Gamble Smart to comply with the terms of this Order shall be deemed contempt of Court, subjecting Gamble Smart to contempt remedies to be determined by the Court, including fines and seizures of property.

This Court shall retain jurisdiction over this matter and the parties in order to construe and enforce this Order.